**BECKSTROM & BECKSTROM, LLP**
James A. Beckstrom, Esq.
Nevada Bar No. 14032
400 South 4th Street, Suite 650
Las Vegas, Nevada 89101
Telephone: (725) 300-0599
jb@beckstromlaw.com

**BEN'S LAW**
Ben Lehavi, Esq.
Nevada Bar No. 14564
5940 South Rainbow Boulevard
Las Vegas, Nevada 89118
ben@benslaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALERCE BIOLOGIX PR, LLC; and ALERCE MEDICAL GROUP, LLC, | Case No.: 2:25-cv-01665-CDS-NJK |
| Plaintiffs, | |
| vs. | ***HEARING REQUESTED*** |
| MARIZEL YUKEE; ALESSA DOMINQUE YUKEE; ALLCARE WOUND TREATMENT, LLC; DERMLIFE HEALTH SOLUTIONS, LLC; MY BEST HEALTH FIRST, LLC; WOUND MEDIC, LLC, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6) and for the reasons set forth in the statement of points and authorities below, Defendants MARIZEL YUKEE; ALESSA DOMINQUE YUKEE; ALLCARE WOUND TREATMENT, LLC; DERMLIFE HEALTH SOLUTIONS, LLC; MY BEST HEALTH FIRST, LLC; and WOUND MEDIC, LLC (collectively "Defendants"), by and through their attorney of record, James A. Beckstrom, Esq., with the law office of Beckstrom & Beckstrom, LLP and Ben Lehavi, Esq., of Ben's Law, respectfully request that this Honorable Court grant the instant Motion to Dismiss.

Page 1 of 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

The instant action involves a purported breach of a Master Purchase Agreement ("MPA") between Alerce Biologix PR, LLC ("Alerce Biologix") and Marizel Yukee ("Marizel"), wherein Alerce Biologix asserts it sold various cellular based wound care products to Marizel and her affiliated entities, but was not paid for the products.

Despite the MPA being signed by Marizel for the benefit of Marizel's entity My Best Health First, LLC ("MBHF"), Alerce has gone on the offensive and attempted to exert pressure on Marizel and MBHF by impermissibly expanding this case to include every entity and person associated with Marizel, with no factual basis of legal justification. This includes Alerce Biologix suing Marizel's twenty-four-year-old daughter Alessa Yukee ("Alessa"), along with three other entities— Allcare Wound Treatment, LLC ("Allcare"), Wound Medic, LLC ("Wound Medic"), and Dermlife Health Solutions, LLC ("Dermlife").

Alerce Biologix sues Alessa not with specific allegations of participation, conduct, or a factual basis in the purported MPA, but rather by way of a collective self-serving definition of "the Yukee Care Network," wherein Alerce Biologix collapses four distinct legal entities—and their owners—into one undifferentiated group to utilize group pleading in an attempt to pass muster and drag all of these entities and individuals into this action. This Motion seeks: (1) dismissal as to all claims asserted by Alerce Medical against all Defendants, because the Complaint is devoid of any facts to sustain a claim of relief in favor of Alerce Medical and all claims belong to Plaintiff Alerce Biologix; and (2) dismissal of all claims asserted against Alessa, who is not a proper party to this lawsuit and was named out of an act of pure harassment.

First, the Complaint fails to assert any claim on behalf of Alerce Medical, who is confirmed to be a distinct entity from Alerce Biologix. Alerce Biologix is the entity subject to the MPA who supplied the Products and there is no reference within the Complaint to any claim Alerce Medical maintains against the Defendnats. Outside of the initial introductory statements, no factual basis exists in support of a claim for relief belonging to Alerce Medical, who is not a party to the MPA and is not asserted to have provided any products to any Defendants.

Accordingly, Alerce Medical's apparent duplicative claims must be dismissed as to all Defendants.

Second, all of Alerce Biologix's claims against Alessa fail for lack of sufficient factual allegations supporting a theory of veil piercing and reverse veil piercing under the asserted alter-ego theory of liability. The Complaint is devoid of any individualized factual allegations to satisfy the elements of alter-ego liability and Alerce Biologix's generic recitation of the elements of alter-ego coupled with self-serving conclusions and group pleading are not sufficient to embroil Alessa into this litigation.

Third, Alerce Biologix has failed to plead facts that could subject Alessa to a claim for breach of contract or unjust enrichment. The Complaint is devoid of any allegations that any individual outside of Marizel purportedly entered a contract outside of the referenced MPA with Alerce Biologix. While Alerce Biologix has attempted to drag Alessa into this litigation through a theory of "guilt by association," such a position is not a permissible basis under Nevada law. Moreover, with a valid MPA asserted to exist, Nevada law does not allow quasi-contractual claims to be asserted against Alessa that contradict the MPA.

## II.    STATEMENT OF FACTS

Plaintiff Alerce Biologix PR, LLC ("Alerce Biologix") alleges they entered into a Master Purchase Agreement ("MPA") with Defendant Marizel Yukee ("Marizel") on November 4, 2023, wherein in exchange for promises of monetary payment, Alerce Biologix was to supply cellular/tissue-based products ("Products") to business associated with Marizel. ECF No. 1 at ¶¶22 & 47; *see also* November 4, 2023, MPA, attached as **Exhibit A**.[1]

According to Alerce Biologix, the MPA defines the "Customer" as Marizel, who is also the sole signatory to the MPA. *Id*. at ¶25; **Exhibit A**. This is despite the MPA stating that the practice name to the MPA is My Best Health First, LLC ("MBHF"). **Exhibit A**.

/ / /

---

[1] Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

It is further alleged that under the MPA, the "Customer agree[d] to pay Alerce Biologix the balance due amount stated in each Invoice within forty-five (45) days after Product shipment." *Id*. at ¶27; **Exhibit A**. According to Alerce Biologix, over the preceding months it shipped millions of dollars of Products under the MPA, which went unpaid. *Id*. at ¶¶30-33. The unpaid amounts are further asserted to be the result of Marizel refusing to pay for the Products based on a Medicaid recoupment targeting reimbursement of the Products. *Id*. at ¶39. In total, Alerce Biologix contends under the MPA, $29,566,400.00 remain unpaid. *Id*. at ¶36.

Despite Marizel and MBHF being the only parties referenced within the MPA, Alerce Biologix has sued three additional entities, Allcare, Dermlife, and Wound Medic. *See generally* ECF No. 1. Alerce Biologix has also sued Marizel's twenty-four-year-old daughter, Alessa Dominque Yukee ("Alessa), who is the sole owner of Dermlife. *Id*. at ¶¶4 and 18.

This is despite Allcare, Dermlife, Wound Medic, nor Alessa, being parties to the MPA. *See* generally, ECF No. 1; **Exhibit A**. Specific as to Alessa, there is no allegation that Alessa agreed to be bound to any contractual agreement with Alerce Biologix or did anything other than purportedly place orders with Alerce Biologix under the MPA. *See* generally, ECF No. 1.

Despite the Complaint confirming the operative MPA involves only Marizel and MBHF, Alerce Biologix impermissibly has collapsed all six defendants, who are distinct legal entities (and their owners)—into one undifferentiated group defined as the "Yukee Care Network." *Id*. at ¶1. Alerce Biologix utilizes this vague group pleading to assert claims for breach of contract and quantum meruit/unjust enrichment as to each named Defendant under a theory of alter-ego liability, despite Alerce Biologix failing to assert any factual basis to support alter-ego liability outside of reciting boilerplate elements "upon information and belief." *Id*. at ¶49.

Lacking within the Complaint is any factual basis demonstrating commingling, undercapitalization, or any specific misuse of the corporate form by any of the entity defendants. *Id*. Further lacking are any individualized facts relating to each of the specific entities and individual defendants articulating the necessary elements of alter-ego liability. *Id.* Instead, Alerce Biologix generically lumps all the defendants together and simply states the undifferentiated "Yukee Care Network," should be subject to veil piercing. *Id.*

As to Plaintiff Alerce Medical Group, LLC ("Alerce Medical"), a separate and distinct entity from Alerce Biologix, the Complaint provides no factual allegations to sustain a claim against any named defendant. *See* generally, ECF No. 1. Alerce Medical is a legally distinct entity from Alerce Biologix. *Id.* at ¶¶13-14. Alerce Medical is not a party to the purported MPA and did not provide any Products to any named defendant. *Id.* at ¶¶22-30,47.

## III.    LEGAL STANDARD

A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiffs favor. *Id.; Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1247–48 (9th Cir.2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal,* 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly,* 550 U.S. at 570.

## IV.    LEGAL ARGUMENT

The Complaint is subject to several fatal defects that require dismissal. First, the Complaint fails to assert any claim on behalf of Alerce Medical as to all Defendants. Alerce Medical is a separate and distinct entity from Alerce Biologix and Alerce Biologix is the entity subject to the MPA who supplied the Products. With Alerce Medical not having provided any Products or

contracted with any defendant, Alerce Medical's apparent duplicative claims must be dismissed as to all Defendants.

Second, Alerce Biologix has failed to assert sufficient factual allegations to sustain a theory of veil piercing (and reverse veil piercing) by way of an alter-ego theory of liability as Alessa. The Complaint contains no individualized factual allegations regarding what acts or omission Alessa engaged in to result in alter-ego liability and Alerce Biologix's generic recitation of the elements of alter-ego liability coupled with self-serving conclusions and group pleading are not sufficient to embroil Alessa in this litigation.

Third, Alerce Biologix has failed to plead necessary foundational facts sufficient to subject Alessa to a claim for breach of contract or unjust enrichment claim. The Complaint lacks allegations that any entity or individual outside of Marizel and MBHF entered a contract outside of the referenced MPA with Alerce Biologix and no facts alleged support Alessa contracting with Alerce Biologix. It is undisputed that Alessa was not a party to the MPA and Nevada law does not allow quasi-contractual claims to be asserted when an express contract governs the subject matter, as it does in this case.

### A. ALERCE MEDICAL IS NOT A PROPER PARTY AND STATES NO CLAIM FOR RELIEF.

Alerce Medical has failed to state a claim for relief against any named Defendant. While Alerce Medical is grouped together as one of the defined "Plaintiffs," the Complaint is clear on its face that Alerce Medical has not actually asserted any claim against any named Defendant. *See generally*, ECF No. 1. The Complaint confirms Alerce Medical is a legally distinct entity from Alerce Biologix. *Id.* at ¶¶13-14. The Complaint and the MPA further unequivocally confirm Alerce Medical is not a party to the purported MPA and did not provide any Products to any named Defendants. *Id.* at ¶¶22-30,47. To the contrary, every allegation references the MPA and consideration provided by Alerce Biologix and Alerce Medical is not alleged to have done anything or provided anything. *Id.* Accordingly, all claims asserted by Alerce Medical are subject to dismissal.

**B.      ALERCE BIOLOGIX'S ALTER-EGO ALLEGATIONS AGAINST ALESSA ARE CONCLUSORY AND LEGALLY DEFICIENT.**

**1.      The Law of Alter-Ego Liability.**

"Nevada has long recognized that although corporations are generally to be treated as separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 8 P.3d 841, 845 (Nev. 2000). To state alter ego liability, a plaintiff must allege: (1) the corporation is influenced and governed by the person asserted to be the alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) adherence to the corporate fiction would sanction fraud or promote injustice. *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 747 P.2d 884, 886 (1987). "Each of these requirements must be present before the alter ego doctrine can be applied." *N. Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*, 86 Nev. 515, 471 P.2d 240 (Nev. 1970).

However, alter-ego claims are subject to great scrutiny, as the corporate form is "not lightly thrown aside." *Loomis*, 116 Nev. 896 at 846. Courts routinely dismiss alter ego claims at the pleading stage where plaintiffs fail to allege detailed facts showing unity of interest or fraudulent use of the corporate form. *See Green Solutions Recycling, LLC v. Refuse, Inc.*, 2017 WL 1136664, at *5–6 (D. Nev. Mar. 27, 2017); *Octaform Sys. Inc. v. Johnston*, No. 2:16-cv-02500, 2018 WL 11304606, at *6 (D. Nev. Mar. 13, 2018). Like all claims before this Court, conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss. *See Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) (per curiam). "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1116 (C.D.Cal.2003).

/ / /

/ / /

/ / /

## 2.    Alerce Biologix Cannot Satisfy the Alter-Ego Elements with Group Pleading Through the Self-Defined "Yukee Care Network."

As a threshold issue, there is no entity called the "Yukee Care Network." Alerce Biologix admits the same, but throughout the Complaint attempts to lump four entities (MBHF, Allcare, Wound Medic, and Dermlife) and two individuals (Marizel and Alessa) as one of the same with this self-serving definition.   The Complaint makes no attempt to analyze each entity on an individualized basis and provides no facts specific to each defendant.   Plain and simple, Alerce Biologix's group pleading approach to satisfy the elements of alter-ego liability fail under Nevada law, as there are no articulated plausible facts as to each entity sued that would pave the way to cast aside the corporate cloak.

More specifically, Alerce Biologix must identify plausible facts as to *each entity* that would support deeming each such entity as one in the same as Marizel (or apparently, Marizel and her daughter Alessa).   This includes a showing as to each entity that: (1) the corporation is influenced and governed by the person asserted to be the alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) adherence to the corporate fiction would sanction fraud or promote injustice.  *Polaris Industrial*, 747 P.2d at 887.   Allegations cannot be based on conclusory allegations reciting the elements of alter ego liability.  *Octaform Sys. Inc. v. Johnston*, No. 216CV02500APGVCF, 2018 WL 11304606, at \*6 (D. Nev. Mar. 13, 2018) (unpublished).   "Each of these requirements must be present before the alter ego doctrine can be applied." *N. Arlington Med.*, 471 P.2d 240.

In reviewing the Complaint, the generic references provided within Paragraph 49 do not pass muster.   The Complaint simply states in relevant part the following conclusory allegations, which are nothing short of a bare recitation of the elements of alter-ego liability:

> Upon information and belief, the Yukee Care Network are alter-egos of Marizel Yukee or Alessa Yukee and/or the corporate veil should be pierced. Upon information and belief, the Yukee Care Network is influenced and/or governed by Marizel Yukee and/or Alessa Yukee, there is a unity of interest and ownership by Marizel Yukee or Alessa Yukee that is inseparable from the Yukee Care Network, and adherence to the corporate fiction would sanction a fraud or promote injustice as Marizel Yukee and/or Alessa Yukee are using the corporate form to advance person [sic] interests, abuse the corporate form, and commit wrongful acts, such as hiding assets or preventing creditors from collecting debts. Upon further

information and belief, Defendants fail to observe corporate formalities and commingle funds. Upon further information and belief, Dermlife was organized and operated to make it a mere instrumentality of Marizel Yukee, Alessa Yukee, or the other entities in the Yukee Care Network.

ECF No. 1 at ¶49. Lacking is a single factual statement describing how each of the named entities are alter-egos of one another or how Alessa is an alter-ego of apparently each of these entities and her mother. There are also no allegations describing how these entities (all of them apparently) are undercapitalized, divert funds from one another, commingle assets, or have "committed wrongful acts." Lacking entirely is any allegation of what the wrongful acts are or how fraud would follow if the corporate cloak was not cast aside for each of these individuals and entities.

While the Complaint asserts Marizel is a common owner of MBHF, Allcare, and Wound Medic, no allegations are provided to support alter-ego liability of Alessa, as it is undisputed that Alessa shares no common ownership with Marizel through the other named entities. ECF No. 1 at ¶¶17-20. The Complaint is also devoid of any allegation that Alessa personally benefited from orders filled by Alerce Biologix or that Alerce Biologix would be subject to injustice without the inclusion of Alessa in this action. The only allegations Alerce Biologix has submitted is a conflicting and broad sweeping conclusion that four entities and two individuals "contracted" each contracted with Alerce Biologix for the purchase of millions of dollars of products, despite Alerce Biologix claiming that the each such order was subject to the MPA—which was signed only by Marizel and referenced MBHF. *Id.* at ¶48. On this point, the allegations are clear and unequivocal that each purchase was pursuant to the MPA and only between the parties bound to the MPA, as Alerce Biologix alleges:

> Between November 4, 2023, through May 29, 2025, Marizel Yukee, Alessa Yukee, the Yukee Care Network, and Alerce Biologix entered valid, enforceable, and binding contracts consisting of Purchase Orders **under the Master Purchase Agreement to purchase** Products from Alerce.

*Id*. (Emphasis added).

At this stage, Alerce Biologix is required to provide plausible facts showing ***each*** targeted entity is influenced and governed by the person asserted to be the alter ego, there is such unity of interest and ownership that the entities are inseparable from one another, and adherence to the

entity status would sanction fraud or promote injustice. *Loomis*, 116 Nev. 896 at 846. Alerce Biologix has failed to satisfy one, let alone all of these requirements, as to Alessa.

Alessa is not a party to the MPA, Alerce Biologix concedes all orders were made under the MPA, and no factual basis exists to indicate any common ownership of any entity relevant to this case between Alessa and Marizel. Because no such facts supporting these required elements have been plead, Alessa is subject to dismissal. *See Green Solutions Recycling, LLC v. Refuse, Inc.*, 2017 U.S. Dist. LEXIS 44481, at *5–6, 2017 WL 1136664 (D. Nev. Mar. 27, 2017) (dismissing all claims against corporate entities related to party to relevant contract because "[the] Defendants have their own corporate identity, and the Complaint does not assert any allegations to support proceeding on an alter ego theory" and further dismissing alter ego claims based on Plaintiff "generally lumping" defendant entities together, with no factual specification or deviation).

### 3. <u>Alessa Is Not an Alter-Ego of Any Other Defendant (Entity or Individual).</u>

Plaintiffs have failed to state a claim against Alessa, the twenty-four-year-old daughter of Marizel. It is undisputed that Alessa is not a party to the MPA and Alessa is not an owner of any named entity outside of Dermlife, an entity which Plaintiffs concede doesn't have common ownership with Marizel. ECF No 1. at ¶¶17-20. Alerce Biologix also does not provide any factual allegations as to why Alessa is an alter-ego of her mother of any of the named entities within this action. Plain and simple, the allegations regarding Alessa are non-existent, except for a statement that Alessa owns Dermlife and purportedly "made orders" to Alerce Biologix for various orders to benefit "the Yukee Care Network." *Id*. at ¶¶34 and 49. This generic reference to the self-serving group of entities and individuals defined by Alerce Biologix as the "Yukee Care Network" provides lacks any allegations demonstrating conduct by Alessa that would personally bind her to the debts and obligations of the purported MPA, or any other basis of personal liability that would justify casting aside the relevant corporate cloaks for the defendant entities in this action.

Looking specifically at the first element, as set forth above, there are no allegations asserting Allcare, Wound Medic, or Marizel are influenced or governed by Alessa. Alessa is not stated to have influence or control over these entities in any fashion, outside of having an

ownership interest in Dermlife, an entity separate from her mother's entities. There are no allegations to indicate Alessa has received a personal benefit from any products of Alerce Biologix or that she has not followed corporate formalities with Dermlife, outside of the conclusory catch phrases provided within Paragraph 49.

As to the second element, the Complaint is clear that Alessa maintains no ownership interest in any other entity outside of Dermlife and the sole owner of MBHF, Allcare, and Wound Medic is Marizel. ECF No. 1 at ¶¶17-20. There is no description of how Alessa is purportedly affiliated with these entities.

Turning to the final element, which requires allegations that adhering to the corporate fiction would sanction fraud or injustice, the Complaint is devoid of any such supporting allegations. *Allstate Prop. v. Mirkia*, No. 2:12-CV-1288-RCJ-PAL, 2013 WL 944778, at *10 (D. Nev. Mar. 7, 2013) (to survive a motion to dismiss an alter ego allegation, a complaint must "provide factual enhancements that would support the elements of alter ego liability.") Lacking is any act by Alessa that would indicate assets are being concealed by her for the benefit of any other named defendant to avoid a debt due to Alerce Biologix.

Instead, Alerce Biologix simply restates the generic catchphrases connected to alter-ego claims, without any specific factual basis, including claims that Alessa "commits wrongful acts," "abuses corporate form," and "advance personal interests." *Id*. at ¶49. Accordingly, because there have been no allegations to sustain a claim of alter-ego liability against Alessa in any form or fashion, all claims against Alessa must be dismissed.

**C.      ALERCE BIOLOGIX'S CLAIM FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT AGAINST ALESSA FAIL.**

According to the Complaint, the MPA is an enforceable contract, wherein Marizel is the defined customer for the benefit of MBHF. ECF No. 1 at ¶¶22 & 47; **Exhibit A**. Outside of the impermissible attempt to utilize conclusory group pleading to assert alter-ego claims against Marizel and the entities she owns (Allcare, Wound Medic, and MBHF), there are no factual statements that support the necessary elements for a claim of breach of contract claim or unjust enrichment as to Alessa. Additionally, because the MPA is a contract governing the subject matter

at issue, Nevada law prohibits claims for unjust enrichment that would run contrary to the written terms of the MPA.

### 1.    Alessa Cannot Be Subject to a Claim for Breach of Contract.

Alessa is not a party to the MPA and no facts support a claim for breach of contract against Alessa. To state a claim for breach of contract under Nevada law, Plaintiffs must allege: (1) the existence of a valid contract, (2) breach by the defendant, and (3) damages. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006). Contracts are construed from the written language of the document and enforced as written. *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (1990).

Within the Complaint, Alerce Biologix does not allege that Alessa executed the MPA, but rather that Alessa made purchase orders "under the MPA." *See* ECF No. 1 at ¶48. Short of placing purchase orders, there are no allegations that Alessa contracted with Alerce Biologix whatsoever. Nevada law is well settled that "[n]o one is liable upon a contract except those who are parties to it." *Albert H. Wohlers & Co. v. Bartgis,* 114 Nev. 1249, 1262, 969 P.2d 949, 959 (1998), *as amended* (Feb. 19, 1999).

The Complaint is clear that Marizel signed the MPA and is the sole party to that contract, with the exception of a reference to one of Marizel's entities, MBHF. ECF No. 1 at ¶¶22 & 47; **Exhibit A**. The Complaint and MPA further state that under the MPA, the "Customer agree[d] to pay Alerce Biologix the balance due amount stated in each Invoice within forty-five (45) days after Product shipment." *Id*. at ¶27; **Exhibit A**. It is further alleged that all of the $29,566,400.00 of unpaid invoices were a breach of the MPA. *Id*. at ¶¶30-33,36. None of these allegations relate to any contractual agreement, let alone a breach by Alessa, as the Customer as stated by Alerce Biologix is that of Marizel. *Id.* With the alter-ego claims deficient as a matter of law, Alerce Biologix has failed to state a freestanding claim of breach of contract as to Alessa.

### 2.    Alerce Biologix's Quantum Meruit/ Unjust Enrichment Claim is Barred by the Existence of the MPA.

Alerce Biologix's claim for quantum meruit and/or unjust enrichment is also subject to dismissal, as the claim contradicts with the MPA, an express contract governing the same subject

matter.  Nevada law forecloses quasi-contractual claims when an express contract governs the subject matter.  *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997).  "To permit recovery by quasi-contract where a written agreement exists would constitute a *subversion of contractual principles*."  *Lipshie v. Tracy Investment Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824 (1977) (emphasis added).

District courts routinely dismiss quasi-contract claims when a contract governs the subject matter in issue.  *See, e.g., McDonald v. Palacios*, 2016 U.S. Dist. LEXIS 130766, at *51 (D. Nev. Sept. 23, 2016) (dismissing plaintiff's unjust enrichment claim because it "is governed by express, written contracts"); *WuMAC, Inc. v. Eagle Canyon Leasing, Inc.*, 2013 U.S. Dist. LEXIS 20094, at *10 (D. Nev. Feb. 14, 2013) (dismissing plaintiff's claim for quantum meruit because a "claim for quantum meruit is not actionable when the claim is based on an express contract"); *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2006 U.S. Dist. LEXIS 12927 at *23 (N.D. Cal. Mar. 7, 2006) (dismissing unjust enrichment and money had and received claims because "a valid, enforceable contract defining the rights of the parties, forecloses the possibility of bringing a quasi-contract claim"); *see also Elmore v. Hartford Life & Accident Ins. Co.*, 2020 U.S. Dist. LEXIS 47922, *19 (C.D. Cal. Jan. 6, 2020) (recognizing that a claim for money had and received is not actionable when an "express contract governs the subject matter of Plaintiff's claims").

Here, Alerce Biologix affirmatively alleges a contractual relationship governed by the MPA and subsequent purchase orders under the MPA.  *Id*. at ¶¶30-33,36.  While it is generally true that alternative pleading is permissible, Alerce Biologix cannot avail itself of alternative pleading where, as here, it freely alleges the relevant Products and orders for their products are governed by the MPA.  *See Murray v. Provident Trust Grp., LLC*, 2019 U.S. Dist. LEXIS 68403, at *19-20 (D. Nev. 2019) ("While it is generally true that alternative pleading is permissible, Plaintiffs' unjust enrichment claim fails as a matter of law because Plaintiffs themselves allege their relationship with Defendants is governed by the 2017 Contract.").

Nor can Alerce Biologix rely on the quantum meruit claim to serve "as a gap-filler to supply the absent term" in implied-in-fact contracts.  *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 128 Nev. 371, 380, 283 P.3d 250, 256 (2012).  Theories of implied-in-fact contracts may only be

resorted to when "there is no evidence that the parties expressly contracted." *Smith v. Recrion Corp.*, 91 Nev. 666, 668-69, 541 P.2d 663, 665 (1975). Since an express contract governs the relationships between Alerce Biologix and Marizel, Alerce Biologix cannot rely upon quantum meruit to fill in any purported gaps in the contract. The equitable claim for unjust enrichment is therefore not viable as a matter of law. *See McDonald v. Palacios*, No. 2:14-cv-00532, 2016 WL 5400362, at *7 (D. Nev. Sept. 23, 2016) (dismissing unjust enrichment where contract governed). Accordingly, the quasi contract and/or unjust enrichment claim as to Alessa must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the instant Motion to Dismiss, as follows: (a) All claims asserted by Plaintiff Alerce Medical Group, LLC must be dismissed as to all Defendants, because there are no claims for relief advanced on behalf of Alerce Medical Group, LLC and all claims have been asserted for harms to Alerce Biologix PR, LLC; and (2) all claims asserted against Alessa Dominque Yukee.

Dated this 14th day of October 2025.

BECKSTROM & BECKSTROM, LLP


By:  */s/  James A. Beckstrom*
     James A. Beckstrom, Esq.
     Nevada Bar No. 14032
     400 South 4th Street, Suite 650
     Las Vegas, Nevada 89101
     jb@beckstromlaw.com
     *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October 2025, the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed electronically through the Court's CM/ECF system, which causes service upon all counsel registered thereon, upon the parties and at the address listed below:

Will Thompson
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
will.thompson1@us.dlapiper.com

and

Stephen M. Matthews (pro hac vice pending)
Marc A. Silverman (pro hac vice pending)
**DLA PIPER**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
stephen.matthews@us.dlapiper.com
marc.silverman@us.dlapiper.com

*Attorneys for Plaintiffs, Alerce Biologix PR, LLC*
*and Alerce Medical Group, LLC*

/s/    *Suzanne Boggs*
An employee of Beckstrom & Beckstrom, LLP